IN THE MATTER OF THE JOINT PETITION WITH THE GREEN ISLAND WATER COMPANY AND TOMS RIVER WATER COMPANY.

Superior Court of New Jersey
Appellate Division

Argued December 16, 1980—Decided December 31, 1980.

Before Judges MICHELS, ARD and FURMAN.

*Stephen B. Genzer,* Assistant Deputy Public Advocate, argued the cause for appellant Department of the Public Advocate (*Stanley C. Van Ness,* Public Advocate, attorney; *Alfred L. Nardelli,* Deputy Public Advocate, on the brief).

*William D. Lavery, Jr.,* argued the cause for respondent Toms River Water Company (*Davis & Reberkenny,* attorneys; *David R. Oberlander* on the brief).

*Blossom A. Peretz,* Deputy Attorney General, argued the cause for respondent Board of Public Utilities (*John J. Degnan,* Attorney General, attorney; *Erminie L. Conley,* Assistant Attorney General, of counsel).

PER CURIAM.

The Board of Public Utilities (hereinafter BPU) by decision and order allowed the dissolution of Green Island Water Company (Green Island), its acquisition by Toms River Water Company (Toms River) and the amortization of the $30,000 "acquisition adjustment" over a ten year period by including the unamortized balance in Toms River's rate base.

Green Island and Toms River had jointly petitioned BPU to determine the monetary value of Green Island's rate base as the purchase price for its acquisition by Toms River, and to grant

authority to Toms River to include such purchase price in its own rate base for rate-making purposes. Without a hearing BPU found that Green Island had a zero rate base and that its outstanding debts amounted to $29,640. It fixed $30,000 as the "fair purchase price" and provided an "incentive" to Toms River to acquire Green Island by allowing the $30,000 to be included in the rate base and to be amortized over ten years, even though in effect it constituted a payment for outstanding debts and not capital expenditures.

At the time of the BPU decision and order Green Island, a privately-owned utility subject to BPU jurisdiction (*N.J.S.A.* 48:2–13), was serving 315 customers; Toms River, also a privately-owned utility subject to BPU jurisdiction, was serving approximately 25,000 customers. Green Island's water sources were polluted and its wells capped. It supplied water which it purchased from Toms River. Its mains were undersized, in violation of Department of Environmental Protection regulations. It failed to provide fire protection.

According to conclusions of BPU's Bureau of Engineering Operations, Green Island's deteriorated and obsolete system was worthless, and its replacement would entail a capital investment of several hundred thousand dollars.

In its decision and order BPU set forth:

The Board wishes to note and to emphasize that its treatment of the Green Island Water Company in this matter is to be viewed as an extraordinary occurrence. This Order is not to be viewed as a signal to other small water utilities in the State to allow a deterioration of their service in the hope that larger and more capable utilities in their immediate areas will take them over under the same terms as allowed by the Board in this matter. All such acquisitions of small water utilities by other water utilities will be considered by the Board on a case-by-case basis and the most stringent and searching investigation will be had in each and every matter.

The Board will continue to attempt to implement innovative treatments in its handling of small water utility problems in this State. The Board wants to commend the parties in this proceeding for their efforts. The cooperation and dedication of all involved has aided in resolving a problem that has faced this Board for many years.

The Public Advocate urges on appeal that the purchase price should not have been added to Toms River's rate base without a

public hearing. He is not objecting to the acquisition of Green Island by Toms River, assuming that liability for the purchase price is incurred by Toms River's stockholders rather than charged to its customers through a rate base increase.

■  We agree with the Public Advocate's position. A public hearing is statutorily mandated in a proceeding before BPU to determine a utility's rate base. *N.J.S.A.* 48:2–21; *N.J.S.A.* 52:14B–9; *In re Revision of Rates by Redi-Flo Corp.*, 76 *N.J.* 21 (1978). The Public Advocate has standing to participate in an adversary role in such a hearing, representing the public interest. *N.J.S.A.* 52:27–16 *et seq.*

Although Green Island and Toms River did not petition for a rate base increase, the proceeding before BPU was converted into a rate-making proceeding by the resolution to add the purchase price of $30,000 to Toms River's rate base. The Public Advocate, who filed a position paper and participated in a conference of the parties and in oral argument, at all times maintained that a hearing was prerequisite to any commitment of "ratepayer monies."

The Public Advocate urges that, at a minimum, there should have been a factfinding adversarial hearing on the amount of Green Island's outstanding debts prior to fixing the amount of $30,000 as the acquisition adjustment to be included in Toms River's rate base. The Public Advocate also urges that the order authorizing the acquisition adjustment as an addition to rate base is invalid on substantive, as well as procedural, grounds. Again we agree.

■  A surcharge on new rates to recoup revenue deficiencies is in excess of a fair rate of return, and the granting of such a surcharge is contrary to statutory and decisional law. *In re Intrastate Industrial Sand Rates*, 66 *N.J.* 12, 28 (1974); *In re N. J. Power & Light Co.*, 15 *N.J.* 82, 97 (1954); *N.J.S.A.* 48:2–21.

■  In increasing Toms River's rate base, as BPU did in the proceeding on appeal before us, BPU was without authority to

charge past debts of Green Island against Toms River's future rate payers. We view it as not a material difference that, unlike the situation in *Industrial Sand Rates* and *N. J. Power & Light,* Toms River would not be recouping *its own* financial deficits but the financial deficits of Green Island. The BPU decision and order is contrary in principle to *Industrial Sand Rates* and *N. J. Power & Light.*

The Attorney General representing BPU asserts that the problem of small water companies subject to deterioration, obsolescence and fire and pollution hazards is statewide, and that BPU in the proceeding on appeal evolved a "pragmatic" and "innovative" solution, protecting the public interest by assuring continuing and safe service to Green Island's former customers through its acquisition and the replacement of its system by Toms River. That solution, whatever its effectiveness in protecting the public interest, would require legislation, and under existing law, is *ultra vires* BPU.

Accordingly, we reverse the decision and order of BPU that the acquisition adjustment of $30,000 may be included in Toms River's rate base. Except as so modified the decision and order of BPU is affirmed.